Mr. Wilcox, please begin. Thank you, Judge Tenney. And may it please the Court, Jason Wilcox on behalf of Omnitracs. The Board's decision rests on a flawed obviousness analysis that starts with Omnitracs' invention and works backwards from there by reading the prior art with Omnitracs' solution already in mind, rather than from the perspective of a skilled artisan before Omnitracs' invention who is not single-mindedly looking for a preconceived solution. This led the Board to erroneously find that the Moses reference teaches two key claim limitations that simply aren't there. I'm happy to address either one, but I'd like to start with selecting a prescriptive action from a database of prescriptive actions. So Moses does not contemplate prescriptive actions at all, much less selecting them from a directory. Moses is directed to solving a different problem with a different solution. What Moses is concerned about is identifying who to call when there is an emergency, not what to do, and instead trust the independent judgment of the first responders to make that decision. You can see that in paragraphs 2 to 4 of the Moses reference. You can see that in paragraphs 40 to 45 of the Moses reference. And I think it carries through its disclosures. Would you say this is a classic substantial evidence standard review case? It's all about fact-finding. It all comes down to whether the Board was unreasonable in the way it read the Moses reference. Is that right? I think that is largely right, Judge Penn. There's one issue that I'll get to in a minute where I think maybe we have something like a TQ delta problem or a newvasive problem where the Board didn't do the searching analysis it needs to do and there's not substantial evidence because the expert testimony it relied on is too conclusory. For the most part, I agree. This is a substantial evidence appeal. I recognize that that standard of review is difficult, but substantial evidence isn't a toothless standard and there still does have to be substantial evidence for the Board's decision. And we think that when you look at Moses as a whole, Moses simply does not disclose a prescriptive action among other limitations. If Moses' call center, in fact, does send out a message to, I don't know, local fire stations that says literally, stop the trucks, that would be a prescriptive action, right? I agree, Judge Penn. If that is what Moses' system, in fact, did, that would be a prescriptive action. And then at paragraph 32, it does, Moses says, automatically issue alert notices to authorities to stop the trucks in transit, block off the suspected target area, et cetera. And I don't know, I mean, it's hard for us, I think, to say that that was an unreasonable reading of the Moses reference when they were able to lift its exact language out of the reference to teach this, what we agree is a prescriptive action. If that is all we had from Moses, Judge Chen, I agree. That would be challenging for us. But I think that under Warsaw and other cases from this Court, you have to look at the reference as a whole to put that teaching in context. And when you look at, for example, the table that's at appendix 1089 from Moses, which is described in paragraph 42, it gives you an example of what one of these alerts look like and what these rules and rule tables look like. And what's not there is any type of actual instruction to do something. It says what generates the event, what its priority is, and who to call. And that carries through Moses from beginning to end, whether you're looking at the problem it's trying to solve in paragraph 2-4 or its description of the alerts, not just in paragraph 42, but it actually gives an example of what an alert contains in paragraph 39 with the example of a truck with chemical waste. And what it contains is location information and other information of that sort. It doesn't give any type of prescriptive action of what you're supposed to do. That's the same for the example that's in paragraph 45. So when you have all of those teachings telling you what an alert is and what it contains, and then you look at what's in paragraph 32, I think that what a skilled artisan would take away from that is that Moses is sending an alert to alert the first responders so that they can then take those actions, but it's not telling them to take that action. And that's what our expert also said in Appendix 16-16. What are we supposed to make from the ROM 335 patent column 8, which talks about how notifications and alerts can also be considered prescriptive actions? So it does say that, and right before that, in the preceding sentence, it talks about what those prescriptive actions look like, and it says that they're recommendations of actions to take. That's also the board's understanding of what a prescriptive action is at Appendix 30. That was the understanding that Platform Science's expert had. For example, when you look at Appendix 993-995. So I think everyone understood it has to be more than just an alert that just tells you something is happening. It has to be an action to take. That's the dictionary definition of what a prescriptive action is, as the board recognized at Appendix 30. So just sending an alert isn't enough. I think that also follows from the claim language itself, Judge Chen. If you look at the claim language, it says that you generate in real time a proactive alert notification with the prescriptive action for a user. So it's telling you there has to be more than just an alert. It has to be an alert that includes a prescriptive action that's telling you what steps to take and what actions to take. We think that's what's missing from MOSIS. We talked about the Paragraph 32 example, Judge Chen, and why we think that's not right. The board also relied on Paragraph 38, and it read Paragraph 38 and its discussion of instructions to be teaching you. What is the alert or notification that the MOSIS call center is sending to local police and local fire stations when it says four tanker trucks are coming towards the city, town, and square? There has to be a little more information than just sending a red light to the trucks, right? I agree. So if you look at Paragraph 39 of the MOSIS example, what it says is that that alert will include vehicle information. This is about a runaway truck that's got hazardous waste on it. Vehicle information, the location of the truck, the material that it has, and response information like where to go and essentially what type of unit is needed. What it doesn't do is it doesn't tell them, and here's how you deal with the chemical situation. It leaves that to their judgment and their understanding, trusting the first responders to know what to do rather than trying to prescribe for them, here are the recommended actions you need to take to deal with this emergency. And that makes a lot of sense in the context of MOSIS because as it says in Paragraphs 32 and 34, it's in some ways trying to predict events that haven't happened yet. And so having this pre-planned, here's exactly how you can respond to an event that we're just predicting might happen is a little bit difficult. And figuring out how to deal with a large-scale mass casualty event or something of that sort is difficult, and it's hard to have preset rules. Instead, that's why you want to trust the judgment of first responders. Have you moved to the issue of event or is what you're saying about prescriptive action? Which one are you saying is missing from MOSIS? I'm still saying prescriptive action. I can talk about event if you want. I think that my stronger argument is both prescriptive action and the fact that there's not a directory of prescriptive actions in MOSIS. We do also think that the event is missing. But at least on event, maybe we can deal with it quickly. The Board applied the same construction that you were proposing to them, but we don't have a claim construction dispute on that, correct? There's no claim construction dispute about event. It's a substantial evidence argument about whether what is there and what is disclosed in MOSIS is, in fact, an event. And a disagreement, which we think that there's no substantial support evidence for the Board's position about whether, for example, in paragraphs 31 and 32, you have these examples of either a fuel spill or a speeding vehicle, whether what happens is you get raw event data, information like, hey, a valve is open on the truck, or here is its current speed, which is the type of information that you're asking. But you're not asking us to construe event as requiring, you know, the truck is going X miles an hour, and the speed limit there is X minus something. Therefore, we have the event of speeding. You're not asking. That's not something we have to decide as a question of law what an event is, right? No, you don't have to decide that as a question of law. I agree. We're not bringing you a claim construction dispute. I think you do have to decide, though, that the event in MOSIS that is getting transmitted is that type of information about a fuel spill or the truck is actually speeding and not just kind of the raw information of here's the speed, and then on the back end you figure out that's too fast for that road. And the reason why is actually because of other claim limitations and the way the Board analyzed them. So, for example, the claim also requires determining whether at least one event meets a defined condition. The events that the Board found MOSIS teaches that are then compared against a defined condition are those kind of what are called top-level events about there is a fuel spill or there is a truck that is going too fast on this specific road. It wasn't just the raw data of here is the truck's speed. So, even if you thought that just that raw data about what the truck's speed is would be enough to be an event, that isn't the way the Board thought about it when it applied it to the other claim limitations. So, on APA review, you would have to send it back. The only way you can not send it back is to conclude that the events that are being sent are actually this truck is going too fast for this road or there is a fuel spill. We think that isn't what MOSIS teaches. We think that if you look at the type of information that MOSIS stores in its database at paragraphs 17, 25, 28, and then 32 to 33, it is all storing essentially raw information or information about population centers or what resources are available. It's not storing the actual events themselves that it's receiving from the vehicle. So, we don't think you can affirm on that ground, but that is the basis on which I think you would have to affirm if you were going to affirm based on event. Now, just to get back to one last point on prescriptive action, and my final point is even if you think that MOSIS does teach a prescriptive action, it doesn't teach a directory of prescriptive actions, which everyone agrees is a list of items used to reference those items. That's the definition that Platform Science's expert used at Appendix 993, and it's the one that Platform Science used on page 21 of its petition. If you look at, for example, the table at Appendix 1089 from MOSIS, it stores conditions, who to notify, and the notice. But even if you think that these rules that are being there also are included, even though they're not shown in the table, that might be then a prescriptive action, but it's still not showing you a directory of prescriptive actions where you have a list of prescriptive actions, and you choose from that list of prescriptive actions to decide how to respond to an event. What the board said to get there, which you can see at Appendix 34, is that, well, response instructions installed in a rules engine program qualify as a directory. That was all of its analysis. So to get back to my earlier remark, Judge Tan, we don't think that under newvasive and ANOVA, that's the type of searching obviousness inquiry that you need to do. There needs to be some explanation of why that satisfies the definition of what is a directory. The question is if, you know, MOSIS' references to the call center having things like instructions or response rules or other things that maybe you would consider to be prescriptive actions, they have to be stored somewhere, right? I agree they have to be stored somewhere. They have to be probably stored in some kind of a database. They have to be stored in some kind of a database. What they don't have to be stored in is a directory. Now I'm trying to understand what's the delta, what's the daylight between a directory and a database and are we making a mountain out of a molehill? Well, I don't think that we are making a mountain out of a molehill. I think that what the delta is. So what's special about a directory? What's the actionable advance? Yes. What is the contribution to the useful arts about a directory versus a database? So first off, the contribution to the useful arts I think is the entire claim and how you combine all of the elements obviously, but setting that aside. I'm just trying to understand directory versus database. Yeah, and I think the difference is how it is organized and the directory is that it's listing out the prescriptive actions and you go in and you pick out the prescriptive action. The rules and the way they're described in Moses, you have a rule and it says here is the action you take. Why wouldn't that be true for a database as well? You could organize a database that way. That doesn't seem to be the way Moses does do it though. There's nothing in Moses that says you organize it in that way. What makes this, and that does go to what makes this an invention and what makes this special, was that there wasn't just, hey, here's a rule and here's the action you have to take. You see that there's an event. You go and you look and you have an entire menu of prescriptive actions and you decide given all of the contextual information I have, what's the right response in this specific circumstance? So I have a separate directory of prescriptive actions that it's not just a one-to-one correspondence of here's my rule and here's my response. We think that's what's missing. I'll save the rest of my time for you. Thank you, Judge Chen. Mr. Richards. Good morning, Your Honor. Oliver Richards on behalf of Platform Science. May I please report? As the Court noted early on in Mr. Wilcox's argument, this is a straightforward, substantial evidence appeal. There's evidence in the briefings and both here and below, the parties have disagreements as to how to read Moses. What are prior reference teaches and how a skilled artist would understand those teachings? These are quintessential questions of fact. The Board below is statutorily authorized to resolve factual questions. The Board did so carefully. It weighed the parties' arguments. It weighed the evidence, including Moses, the testimony from the experts. It resolved those factual questions in Platform Science's favor. Now on appeal, all on the tracks appears to raise our disagreements with the Board's factual findings. This Court, therefore, need only consider whether the Board's findings are supported by substantial evidence. Because they are, this Court must affirm. So as Mr. Wilcox pointed out, there's two limitations on appeal. I'm happy to take them in any order the Court wishes. But absent a preference. Can you talk about this table on 1089 of Moses? Sure. I think if you look two paragraphs earlier, paragraph 40, there's a preference to the discussion of that table that talks about this as an additional feature of the system. It provides for notices to agencies and the carriers themselves. I don't think it takes anything away from the earlier teachings, which is about notifications to the authorities. So if we look at paragraph 40, it says, it will be appreciated that an additional module may be incorporated and implemented into the Processor 29 for the purposes of allowing potential vulnerable targets to receive proper notifications. So if you look down at paragraph 42, it talks about these notifications, and it talks about to the carrier and the agency carrier. Prior art references often contain many different teachings, right? And you've got different alternatives that can be applied. And there's nothing here that takes away from the earlier expressed teachings. As the Court pointed out, there are expressed teachings in here as to what the notifications to the authorities are. For example, in paragraph 32, it expressly says, it talks about what the Processor does. Excuse me, in paragraph 31, it talks about that the Processor sends this information to the authorities to stop the trucks. This is something the system does. This is an expressed teaching. More than that, you know, it doesn't matter what I think. You know, it matters what the Board thinks, right? The Board is entitled to resolve these factors of disagreement, right? Certainly, they were entitled to look at paragraph 31 and 32 and look at Omnitrax's arguments, look at our arguments, and decide whose arguments were better based on the evidence. And all this Court needs to consider is whether there's substantial evidence. Paragraphs 31 and 32 are substantial evidence in support of the Board's factual determination. What about the directory? Does the Board make a specific finding that Moses discloses a directory? Yes. I think that, you know, the case they pointed out, there was a single sentence. There's certainly more than a single sentence here. The Board, you know, as Judge Chen noted, there's not a whole lot of teachings in the 335 patent about what a directory is. There's certainly no specific requirement about the structure it must take. It's really just storage and memory. The Board does reach, specifically spends like a page and a half discussing directory. Apologies. Now that's 34 and 35. The Board, you know, discusses what a directory is and spends a whole paragraph, if that ain't about a page on it. You know, it addresses, on the tracks of arguments, which are the same ones they make on appeal. And it makes specific fact findings rejecting them. Accepting the testimony of platform science is an expert. And of course, expert testimony is substantial evidence in support of the Board's findings. Does the Board grapple with a distinction between database and directory? And is that something we should be concerned with? I think there's ample case law from this Court saying the Board's required to address arguments to the extent they're raised. That really wasn't a distinction raised. They just said it wasn't a directory. Our expert pointed out that what the three-year patent says is a directory is simply storage. And it pointed to the teachings of Moses and says, yes, of course there's storage of these prescriptive actions. They must be there. That's how computers work. Computers store things and then reproduce them. The Board was entitled to rely on that expert testimony. I'm happy to address any other questions the panel has. I'll just point out that the Board here did, this is not a situation, but the Board did a shoddy job. The Board carefully considered the evidence. And we even went on to specifically address and express factual findings rejecting the very arguments that Omnitrax is now making here on appeal. Omnitrax is, of course, entitled to its view, but the Board is entitled to reject that view. That Board's rejection of that view is supported by substantial evidence this Court must affirm. I have a question, I guess, not directly related to the merits, but I was a little troubled by some of the language in your brief. I don't know if you drafted the brief or not, but page 30, simply articulating the consequences of Omnitrax's proposed definition of event causes embarrassment because it is so absurd. Page 43, Omnitrax employs a different yet equally insidious diversionary tactic, misdirection. I'm not sure that I have a question, but that sort of language just stuck out and I think at times distracted me from the arguments you were trying to make. So I just thought I'd give you a chance to respond to that if you wanted. Sure. I apologize to the Court if the brief was more incendiary than would be my usual stylistic preferences. And no offense was intended either to the Court or opposing counsel. I do know, though. Just got a little excited. Yes, and some flourishes of language in reference to the Marx Brothers. We don't respond to that kind of language. I understand your onus. Thank you so much for your time. Two minutes. Thank you, Judge Chen. Just a couple quick points in rebuttal. So first on the idea that the table at Appendix 1089 is just an additional feature. I think it's not an additional feature, which you can see if you look at Moses from beginning to end. So if you look at, for example, Paragraphs 2 to 4 of Moses, what it is describing as it's the problem it's trying to solve and the solution it offers is figuring out who to call when you have a mass casualty event and the problem that existed before Moses of how you know who to call and what resources are available. And that's exactly what the table at Appendix 1089 is implementing. The one thing it's not implementing is prescriptive actions. Now on directory, my friend on the other side said that their expert claimed it's just storage and memory. There's no difference between a directory and a database. That's respectfully not the definition that their expert was using below. If you look at Appendix 993, their expert says that a directory is a list of data items and information about those items used to reference those items. That's what we think a directory is too. So it has to have that special table that you use to actually reference the items. That's also the definition that Platform Science itself used in its petition at page 21. So its expert thought that a directory is something special and is more than just storage and memory. The board didn't really grapple with that. If you look at Appendix 34, the page that you were discussing with counsel Judge Chen and Judge Stark and what the board and as far as their expert and his testimony, I think if you look at Appendix 995. There's an argument below that, oh my goodness, any storage of these rules and instructions and Moses in their database wouldn't have the needed pointers to the actual different instructions and response rules. So we did point out that they didn't have substantial evidence to show that it would have the necessary structure in Appendix 1673 to 74. That's obviously ultimately their burden. So even if we didn't make the argument, they still have to live with their own definition and make sure that they have substantial evidence to support it. And the last thing I'll say, because I see my time is up, is their expert and the testimony he relied on, if you look at Appendix 995, it's the same one-sentence conclusory assertion that the board relied on. That's not enough under TQ-Delta or DSS technologies.  Thank you very much. Thank you.